UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SACHIN VIJAY CHHAJED,** *et al.*,

    **Plaintiffs,**

v.

**UR M. JADDOU,** Director,
United States Citizenship and
Immigration Services,

    **Defendant.**

Case No. 2:23-cv-483
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Ur M. Jaddou's Motion to Dismiss Plaintiffs' Complaint (ECF No. 5) and the Parties' Motions for Leave to File Supplemental Authority (ECF Nos. 12, 14, 15, 16, 17).  For the reasons stated herein, the Court **GRANTS** the Parties' Motions for Leave to File Supplemental Authority, **GRANTS** Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff Redondo, and **DENIES** Defendant's Motion in all other respects.

**BACKGROUND**

**I.  Factual Background**

Plaintiffs Sachin Vijay Chhajed, Anh Thi Ngoc Lam, Tram Anh Ngoc Vo, Charlotte Anne Condon, Simran Anand, Carlos Joel Martinez Redondo, Rahil Hemant Bakshi, and Hardik Paradva are noncitizens seeking lawful permanent resident status in the United States.[1]  (Compl., ECF No.

---

[1] Plaintiff Carlos Joel Martinez Redondo received adjudication and approval of his I-526 Petition on March 6, 2023.  Defendant argues, and Plaintiffs concede, that Mr. Redondo's claim is moot. (Def. Mot., ECF No. 5, at PageID # 114; Pl. Resp., ECF No. 6, at PageID # 141.)  Accordingly, Mr. Redondo is hereby dismissed from this case on jurisdictional grounds.  Fed. R. Civ. P. 12(b)(1).  The remaining Plaintiffs are hereafter referred to as "Plaintiffs."

1

1, ¶¶ 1–3, 6–13.)  The process by which they have applied for status is through the EB-5 Investor Visa Program.  (*Id.* ¶¶ 1–3.)  Defendant Ur M. Jaddou is the director of the United States Citizenship and Immigration Services ("USCIS").  (*Id.* ¶ 14.)  Defendant—through USCIS—oversees and operates the EB-5 program.  (*Id.*)

The EB-5 Investor Visa Program is a visa category for foreign national investors who invest $1 million—or $500,000 in certain high unemployment or rural areas—in a new commercial enterprise ("NCE") that creates ten or more jobs for American workers.  (*Id.* ¶ 26 (citing 8 U.S.C. § 1153(b)(5)).)  The EB-5 program allows applicants to pool investments together through USCIS entities known as "Regional Centers."  (*Id.* ¶ 27.)  Persons who apply for status through this program file "Form I-526 Petitions."  (*Id.* ¶ 3.)  Because investors in the Regional Center program often wind up having the same documents regarding their NCEs, USCIS permits Regional Centers to file "exemplar" I-526 petitions that do not relate to one particular investor, but rather encompass the common aspects of multiple investors' petitions.  (*Id.* ¶¶ 46–50.)

When creating the EB-5 program, Congress allocated a set percentage of overall immigrant visas specifically for the Regional Centers.  (*Id.* ¶ 29.)  USCIS's authority to adjudicate these petitions lasted until June 2021.  (*Id.* ¶¶ 30–33.)  From July 2021 until March 2022, USCIS did not process any I-526 petitions, beginning processing again once Congress made changes to the EB-5 program and reauthorized USCIS's authority to adjudicate such petitions.  (*Id.* ¶¶ 33–34, 40.)

In an effort to expedite its processing, USCIS has changed its approach to I-526 petition processing multiple times.  At the time this lawsuit was filed, USCIS utilized a "visa availability" approach.  Under this approach, USCIS would first prioritize processing petitions from applicants whose countries of citizenship had visas available—or soon to be available—then prioritize applicants on a "first in, first out" basis.  (*Id.* ¶ 162.)  Since Plaintiffs filed their lawsuit, USCIS

has updated its policy to modify the visa availability approach.  (*See generally* Def. Mot. for Leave to File Supp. Auth., ECF No. 12.)  Now, in addition to maintaining the visa availability approach, USCIS will also group I-526 petitions which share the same NCE as their basis.  (*Id.* at PageID # 625.)

Plaintiffs' complaint arises from USCIS's allegedly unreasonably delay processing of their I-526 petitions.  Plaintiffs allege that, once USCIS resumed adjudicating I-526 petitions, persons who filed their petitions *after* Plaintiffs were adjudicated *prior* to Plaintiffs.  (Compl. ¶¶ 40–43.)  Plaintiffs allege that, during the July 2021 to March 2022 period, USCIS retained authority to adjudicate petitions but chose not to.  (*Id.* ¶¶ 34–39.)  Despite receiving less applications in recent years, USCIS's processing times began to grow.  (*Id.* ¶¶ 58–62.)  In Fiscal Year 2022, USCIS's processing time for I-526 petitions averaged just over 44 months.  (*Id.* ¶ 63.)  Plaintiffs allege that USCIS has "never adequately explained, let alone attempted to justify" this longer waiting period.  (*Id.* ¶ 65.)  According to Plaintiffs, this is evidence of a "deeply dysfunctional USCIS office," where "[f]ilings are often lost, emails go unanswered, needed guidance arrives too late to be effective, address updates are not processed, and applicants are scheduled for biometrics appointments despite them being unnecessary."  (*Id.* ¶ 66.)  All of this, Plaintiffs allege, is contrary to Congressional direction that USCIS should adjudicate petitions within 180 days.  (*Id.* ¶ 172–75.)

Plaintiffs allege a series of "affirmative actions" which have purposefully delayed adjudication of their EB-5 petitions.  (*Id.* ¶ 185.)  For example, Plaintiffs allege that I-526 processing times are "artificially inflated," USCIS illegally and improperly expedited I-526 petitions associated with a specific Regional Center investment, and USCIS will expedite all I-526

3

petitions for certain NCEs and Regional Centers, but not others, with no rule of reason controlling which NCEs receive such "blanket expedites." (*Id.* ¶¶ 161, 185.)

Each individual Plaintiff alleges that they and their family have suffered immense personal and economic harm as a result of USCIS's delay. Plaintiff Chhajed's daughter had to forego admission to "some of the best schools in the country," and her family has experienced anxiety. (*Id.* ¶ 77.) Plaintiff Lam is separated from her daughter, harming the wellness of Lam and her spouse as they age. (*Id.* ¶ 88.) Plaintiff Vo has been unable to plan her family's future, including whether her children will study in Vietnam or the United States. (*Id.* ¶ 99.) Plaintiff Condon has suffered from anxiety and depression. (*Id.* ¶ 110.) Plaintiff Anand is applying for college, and delay will affect when and where she may go to school. (*Id.* ¶ 121.) Plaintiff Bakshi cannot travel to visit his aging grandparents. (*Id.* ¶ 143.) Plaintiff Paradva suffers sleepless nights and constant worry, unsure of whether he will be able to support his wife and child. (*Id.* ¶ 154.) These hardships are in addition to the economic harm and missed business opportunities Plaintiffs allege to have experienced. (*See generally*, *id.*)

Due to this delay and the harms they have suffered, Plaintiffs brought the current action alleging "unreasonable delay" of an agency action and seeking to compel USCIS to adjudicate their I-526 petitions. (*Id.* ¶¶ 155–90.) To this date—more than four years after Plaintiffs first applied for status—their I-526 petitions remain unresolved.

**II.     Procedural Background**

Defendant moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief may be granted. (Def. Mot., ECF No. 5.) Plaintiffs responded in opposition (Pl. Resp., ECF No. 6), and Defendant replied (Def. Reply, ECF No. 9). Thereafter, the Parties each moved for leave to file notices of supplemental authority, whereby Defendant sought to notify the Court of

4

an updated "rule of reason" for adjudicating I-526 petitions (ECF No. 12) and Plaintiffs sought to notify the Court of new case precedent regarding motions similar to Defendant's (ECF Nos. 14, 15, 16, 17).

These matters are ripe for the Court's review.

## STANDARD OF REVIEW

### I. Motion to Dismiss Pursuant to 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying plausibility standard articulated in *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

### II. Motions for Leave to File Notices of Supplemental Authority

The Parties also move for leave to file notices of supplemental authority. (ECF Nos. 12, 14, 15, 16, 17.) Local Rule 7.2(a)(2) limits briefing on pending motions to response and reply memoranda unless the party seeking to supplement their briefing demonstrates good cause. S.D. Ohio Local Rule 7.2(a)(2).

## ANALYSIS

Plaintiffs allege that Defendant's failure to adjudicate their I-526 petitions constitutes "unreasonable delay" in violation of the Administrative Procedures Act. (Compl. ¶¶ 155–190.) Defendant argues that Plaintiffs have not alleged a plausible unreasonable delay claim, moving to dismiss under Rule 12(b)(6).[2]

"With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). "A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)); *see also Zunier, et al. v. Blinken, et al.*, No. 3:22-cv-217, ECF No. 9 (S.D. Ohio Sept. 22, 2023) (Rice, J.) (denying a motion to dismiss an unreasonable delay claim); *Nasima Akhter, et al. v. Antony J. Blinken, et al.*, No. 2:23-CV-1374, 2024 WL 1173905, at *6 (S.D. Ohio Mar. 19, 2024) (Marbley, J.) (same). Federal courts consider six factors in assessing an unreasonable delay claim:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[2] The Parties moved to file notices of supplemental authority. Defendant seeks to notify the Court of an update to its rule of reason for adjudicating I-526 petitions. Plaintiffs provide recent caselaw regarding the resolution of motions to dismiss unreasonable delay claims, including some involving I-526 petitions. Because the supplemental authority the Parties wish to rely upon are directly relevant to the motion before the Court, the Court **GRANTS** the Parties' motions to file supplemental authority.

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 451–52 (citing *Telecomm.s Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")). These are known as the *TRAC* factors. *See id.*

Plaintiffs argue that the Court should not even engage in the *TRAC* analysis at the motion to dismiss stage, citing *Barrios Garcia*. This Court disagrees.

While the Sixth Circuit cautioned courts regarding the fact dependent nature of unreasonable delay claims, the *Barrios Garcia* court itself applied the *TRAC* factors to the case before it. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 452 (analyzing the third and fifth *TRAC* factors). And, as Defendant argues, entirely disregarding *TRAC* at this stage could inherently conflict with this Court's duty under *Twombly* and *Iqbal* to ensure that Plaintiffs' Complaint states a plausible claim for relief. (Def. Reply, ECF No. 9, at PageID # 542 (citing *Preston v. Kentucky Consular Ctr.*, No. 6:22-CV-015-CHB, 2022 WL 3593052, at *3 (E.D. Ky. Aug. 22, 2022).) Rather, *Barrios Garcia* holds that such an analysis is typically fact dependent, indicating that although *TRAC* is the governing law, at the motion to dismiss stage, the Court's analysis is limited to whether a plaintiff's complaint is legally plausible. *See Akhter*, 2024 WL 1173905, at *6 ("The Sixth Circuit placed a thumb on the scales in favor of discovery, however, in *Barrios Garcia* . . . ."). The Western District of Kentucky has summarized this issue succinctly:

> Thus, when the Fourth and the Sixth Circuits reiterated that unnecessary claims should not be resolved at the motion to dismiss stage, they were referring to a district court's obligation not to grant a motion to dismiss when there were sufficient allegations in the complaint to state a claim, not holding that the *TRAC* factors were inapplicable to a motion to dismiss.

7

*Guthikonda, et al. v. Jaddou*, No. 3:22-cv-375, at *10 (W.D. Ky. Sept. 25, 2023).

With an eye toward the relatively undeveloped record at this early stage of litigation, the Court assesses the *TRAC* factors as follows: (I) whether USCIS applies a rule of reason to its I-526 petition adjudication; (II) whether Congress has imposed a timeline by which USCIS must act; (III) the health and welfare consequences, and the nature and extent of such interests as a result of delay[3]; (IV) the effect of expediting delayed action on agency; and (V) whether USCIS has acted in bad faith.

In considering these factors below, the Court finds that Plaintiffs have met their burden to state a plausible claim for unreasonable delay.

**I.      Rule of Reason**

An agency's approach to making decisions must be governed by a rule of reason.  Some courts consider this factor as the most important in a *TRAC* analysis.  *See, e.g.*, *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017) ("The most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative."); *see also Telukunta v. Mayorkas*, No. 2:21-CV-10372, 2021 WL 2434128, at *2 (E.D. Mich. June 15, 2021) (citing *Muminov v. Sessions*, No. 18-cv-1034, 2018 WL 5298386, at *4 (N.D. Ohio, Oct. 25, 2018)).  The parties disagree regarding whether, and to what extent, a rule of reason guides the adjudication of Plaintiffs' I-526 petitions.

Defendant's purported rule of reason is the visa availability approach.  Defendant explains that the visa availability approach forms a queue of applicants by "comparing the petitioner's country of birth . . . with the Department of State's Monthly Visa Bulleting indicting [*sic*] the

---

[3] These considerations encompass the third and fifth *TRAC* factors, which are typically analyzed together.  *See, e.g.*, *Thakker v. Renaud*, No. CV 20-1133, 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021); *Preston*, 2022 WL 3593052, at *23 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020)); *Akhter*, 2024 WL 1173905, at *6.

availability of visas by country." (Def. Mot. at PageID # 110.) After determining that an applicant's country of birth has a visa available or soon to be available, USCIS manages the workflow in a first-in, first-out order. (*Id.* at PageID # 110–11.) This, according to Defendant, allows applicants from countries where visas are available to better use their country's allocation of visas. (*Id.*) A typical first-in, first-out approach—without regard for the availability of visas—would mean that petitioners whose countries did not have visas available would, nevertheless, receive adjudication before later-filed petitioners whose countries did have available visas. (*Id.*)

USCIS changed its approach to adjudicating I-526 petitions as recently as July 2023. (*See generally* Def. Mot. for Leave to File Supp. Auth., ECF No. 12.) Now, in addition to maintaining the visa availability approach, USCIS will also group I-526 petitions which share the same "new commercial enterprise" as their basis. (*Id.* at PageID # 625.) Defendant argues that this updated approach will increase efficiency and further demonstrate that petitions are reviewed in an order governed by a rule of reason. Plaintiffs counter that this new rule—and Defendant's decision to implement it during this litigation—is arbitrary. (*See generally* Pl. Resp., ECF No. 13.)

First, Plaintiffs argue that USCIS does not have a rule of reason at all. Defendant disagrees, citing multiple cases where courts have found the visa availability approach constitutes a rule of reason. Indeed, USCIS's visa availability approach has been widely recognized as a legitimate rule of reason. *See, e.g.*, *Thakker*, 2021 WL 1092269, at *6 (citing *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021)); *Guthikonda*, 3:22-cv-375 at *12. This Court is inclined to agree. Accordingly, the Court considers Plaintiffs' second, more contentious argument: that USCIS has failed to follow its rule of reason.

Plaintiffs argue that even if USCIS has a legitimate rule of reason, it does not apply the rule of reason in a legitimate way, such that the time for adjudication is not *governed* by the

9

purported rule of reason. Plaintiffs cite fifteen cases that were filed after theirs, but already received adjudication.[4] (Compl. ¶ 163.) Plaintiffs also allege that USCIS unlawfully expedites certain EB-5 investor applications, resulting in an inconsistent application of Defendant's rule of reason to their detriment. (*Id.* ¶ 161; Pl. Resp., at PageID # 152.)

While Defendant has a rule of reason, Plaintiffs have plausibly alleged that Defendant does not apply that rule in a way resulting in this factor in her favor. Plaintiffs' allegation that Defendant inconsistently expedites some EB-5 applications renders it plausible that Defendant deviates from the agency's rule of reason. As district courts facing near-identical allegations have recognized, "[w]hether these allegations have merit and whether USCIS actually follows its purported rule of reason is a question of fact unsuitable for determination at the pleadings stage." *Gutta v. Renaud*, No. 20-CV-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021) (denying a motion to dismiss where the plaintiffs alleged USCIS "does not follow its stated rule of reason since it arbitrarily expedites Form I-526 petitions for certain NCEs and not others"); *see also Guthikonda*, 3:22-cv-375 at *13 (quoting *Gutta* and finding a plausible allegation that USCIS deviates from its rule of reason by improperly granting expedites, which would adversely affect other applicants seeking adjudication). Discovery may reveal that such expedites were wholly consistent with Defendant's rule of reason. *See Guthikonda*, 3:22-cv-375 at *13; *see also Lyons v. United States Citizenship & Immigr. Servs.*, No. 21-CV-3661, 2023 WL 144879, at *6 (S.D.N.Y. Jan. 10, 2023) ("In sum, the plaintiff's allegations raise various factual questions as to whether the delay in the adjudication of his I-526 petition is reasonable, and any attempt to resolve those questions at the pleadings stage would be premature."). At the pleadings stage, however, Plaintiffs have plausibly

---

[4] Plaintiffs also attach fifty such examples to their response. Because such matters are outside of the pleadings, the Court will disregard them.

10

alleged that USCIS has strayed from its purported rule of reason. *See Barrios Garcia*, 25 F.4th at 453 (holding that the first *TRAC* factor weighed in favor of the plaintiffs where they alleged later-filed applications received adjudication before the plaintiffs', and that the plaintiffs' lack of evidence should not end their lawsuit at the motion to dismiss stage).

Defendant further argues that the actual time Plaintiffs' I-526 petitions have been pending is not unreasonable. (Def. Mot., ECF No. 5, at PageID # 122.) Defendant cites to the average I-526 petition processing times contained on USCIS's webpage, noting that the average processing time was greater than Plaintiffs' waiting time at the filing of this lawsuit. Plaintiffs' waiting times have continued to grow since this lawsuit was filed. Regardless, the Sixth Circuit has given very little weight to the average adjudication time of petitions when assessing the first factor. *See Barrios Garcia*, 25 F.4th at 454 ("The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed. We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race."). At the earliest, Plaintiffs have waited nearly four years for adjudication.

Accordingly, the first TRAC factor weighs in favor of Plaintiffs.[5]

**II.     Congressional Indication of Expected Processing Time**

The second *TRAC* factor considers whether Congress has imposed a timeline with which an agency is expected to act. *TRAC*, 750 F.2d at 80.

---

[5] Plaintiffs make a series of other arguments in response to Defendant's motion. For example, Plaintiffs and Defendant argue about whether the eight-month delay between statutory authorizations should be counted as part of Plaintiffs' delay. (Def. Mot., ECF No. 5 at PageID # 119 (stating that USCIS lacked statutory authorization to approve regional center based I-526 petitions from July 2021 to March 2022). Even accepting Defendant's argument, Plaintiffs have still waited nearly four years for adjudication. The Court need not address the Parties' remaining arguments.

11

The Parties agree Congress has not imposed a required deadline by which USCIS must adjudicate I-526 petitions. Congress has, however, instructed that processing immigrant benefits should generally be completed within 180 days of the initial filing. This is a non-binding deadline, and Courts have treated it with varying weight. *Compare Ryan v. Dedvukaj*, No. 09-14178, 2009 WL 3809813, at *2 (E.D. Mich. Nov. 13, 2009) (describing the 180-day policy as "merely a policy statement, worded in precatory terms" and noting it "does not create an obligation for Defendants to meet the 180–day deadline"), *with Keller Wurtz v. United States Citizenship & Immigr. Servs.*, No. 20-CV-2163-JCS, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) ("USCIS is correct that this timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable.").

The Parties disagree about how much weight this Court should give the 180-day guideline in its analysis. Defendant urges this to Court rely on caselaw alone, which has found that immigration delays in excess of five years is often unreasonable, while shorter delays are often not. *See, e.g.*, *Mokkapati v. Mayorkas*, No. 21-CV-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022). Plaintiffs argue that while this is not a mandatory timeframe, it is indicative of the speed with which Congress expects USCIS to act. (Pl. Resp., ECF No. 6 at PageID # 162–63 (citing *TRAC*, 750 F.2d at 79).)

While it is true that the 180-day expectation is not mandatory, the Sixth Circuit and courts within it have given the expectation at least some weight. *See Barrios Garcia*, 25 F.4th at 454 ("[E]ven though an 'unreasonably delayed' analysis does not rise and fall on a statutory deadline, we are mindful that Congress has expressed that immigration-benefit applications should be adjudicated within six months."). Because Plaintiffs' I-526 petitions have been pending for far

longer than the 180-day expectation, but this waiting period is not violating any express Congressional deadline, the Court finds that this factor is neutral.

### III. Health, Welfare, and Nature of Interest Prejudiced by Delay

The third and fifth *TRAC* factors instruct courts to consider the health and human welfare at stake, and the nature and extent of interests prejudiced by delay. *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 94 (D.D.C. 2022) (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

Incidental economic harm to an applicant is not sufficient for these factors to weigh in a plaintiff's favor. *See, e.g.*, *Cohen v. Jaddou*, No. 21-CV-5025, 2023 WL 2526105, at *5 (S.D.N.Y. Mar. 15, 2023) ("Plaintiff does not allege restrictions that implicate his or his family's health and human safety; his allegations are therefore insufficient."). Harm to the well-being of an applicant's family, mental health, or other personal wellbeing are. *Guthikanda*, 3:22-cv-375 at *18 (finding such concerns are "undeniably significant"); *Akhter*, 2024 WL 1173905 at *6 (finding that a plaintiff's need to serve as caretaker for a family member is a plausible allegation demonstrating weighty interests implicating health and welfare). In *Barrios Garcia*, the Sixth Circuit held that the plaintiffs' weighty health and welfare interests alone justified denying the U.S. Department of Homeland Security's motion to dismiss. *Id.* at 452. The lengthy delay—between three and five years—compounded the plausibility of their allegations. *Id.*

All Plaintiffs have alleged some form of economic hardship stemming from Defendant's delay. Their harm has not been purely economic. The Plaintiffs have experienced family separation, missed out on educational opportunities, and have suffered from anxiety and depression. (*See, e.g.*, Compl. ¶¶ 77, 88, 99, 110, 121, 143, 154.)

13

Accordingly, Plaintiffs' plausible allegations demonstrate that factors three and five weigh in their favor.

### IV. Effect of Expediting Delayed Action on Agency Activities

The fourth *TRAC* factor instructs courts to consider the effect of expediting Plaintiffs' delayed action on the agencies other, competing priorities. *TRAC*, 750 F.2d at 80.

Defendant argues that this fourth *TRAC* factor lies squarely in her favor. (Def. Mot., ECF No. 5, at PageID # 124.) Defendant stresses the lack of resources USCIS has, and that granting Plaintiffs relief would merely push them to the front of the line and necessarily delay other persons' applications. (*Id.*; Def. Reply, ECF No. 9, at PageID # 549–50.)

Plaintiffs argue that this "line cutting" rationale may not be supported by the facts. (Pl. Resp., ECF No. 6 at PageID # 167–68.) According to Plaintiffs, agreeing with Defendant's rationale would permit USCIS to "claim that ordering adjudication of their petitions would upset its established adjudicatory procedures while refusing to show what those procedures are." (*Id.*) In essence, Plaintiffs argue that discerning how USCIS adjudicates petitions is best left for discovery.

Multiple courts have recognized the risk Defendant contemplates. *See, e.g.*, *Manzoor v. United States Citizenship & Immigr. Servs.*, No. CV 21-2126, 2022 WL 1316427, at *6 (D.D.C. May 3, 2022); *Preston*, 2022 WL 3593052, at *24 ("[I]f the Court orders Defendants to direct resources to Plaintiffs, the result would undoubtedly 'move all others back one space and produce no net gain.'") (quoting *Mashpee Wampanoag Tribe Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)); *Guthikonda*, 3:22-cv-375 at *20–22.

The Court is mindful of the risk that granting Plaintiffs relief could affect Defendant's competing priorities—a substantial number of persons seek citizenship in this country through

14

lawful means, and USCIS only has so many resources to adjudicate their applications. Given the ample case law on this issue, and the risk that granting Plaintiffs relief could result in a mere reshuffling of the line, the Court finds that this factor weighs in favor of Defendant.

V. **Agency Bad Faith**

Agency bad faith, as a factor, either falls neutrally or in favor of plaintiffs who are seeking relief. If a plaintiff has plausibly alleged bad faith, the court "should conclude that the delay is unreasonable." *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987). However, a plaintiff need not plausibly allege bad faith to advance an unreasonable delay claim.

Plaintiffs allege that Defendant has acted in bad faith. In support of their bad faith argument, Plaintiffs allege that Defendant has taken affirmative actions to purposefully delay adjudications of EB-5 petitions. (Compl. ¶ 185.) Specifically, Plaintiffs allege that Defendant artificially inflates I-526 petition processing times, improperly refused to adjudicate petitions during the eight-month delay in statutory authorization, and has decreased in productivity in recent years. (*Id.*) In support of these arguments, Plaintiffs' response brief includes hundreds of pages of exhibits which were not attached to their complaint. These items are not before the Court and therefore the Court declines to consider them when determining whether Plaintiffs have plausibly alleged Defendant's bad faith.

The Court agrees with Defendant that, "[a]t best, the sixth *TRAC* factor is neutral." (Def. Reply, ECF No. 9, at PageID # 553.) Indeed, a court facing near-identical allegations has concluded as such. *Guthikonda*, 3:22-cv-375 at *23 ("As *TRAC* directs, though, the lack of plausible allegations of impropriety does not weigh against Plaintiffs. This factor is thus neutral and does not alter the Courts analysis as to whether Plaintiffs have plausibly alleged a claim for unreasonable delay."). Plaintiffs' "bad faith" allegations are conclusory in nature. (*See, e.g.*

15

Compl. ¶ 185(l) ("USCIS is careless/manipulative with its statistics and the information is [*sic*] produces to the public and its statements accordingly cannot be taken credibly.").)

Accordingly, because failure to demonstrate a plausible bad-faith allegation does not weigh against plaintiffs alleging unreasonable delay, the Court finds that this factor is neutral.

\* \* \* \* \*

The Sixth Circuit has made clear that unreasonable delay claims "should not typically be resolved at [this] stage." *Barrios Garcia*, 25 F.4th at 451. Applying the *TRAC* factors to this case's facts underscores the Sixth Circuit's guidance. Factors one, three, and five weigh in favor of Plaintiffs; factor four weighs in favor of Defendant; and factors two and six are neutral. Accordingly, Plaintiffs' claims are plausible.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Parties' motions for leave to file supplemental authority. (ECF Nos. 12, 14, 15, 16, 17.) The Court **GRANTS** Defendant's Motion to Dismiss to the extent it seeks dismissal of Plaintiff Redondo on mootness grounds and **DENIES** Defendant's Motion to Dismiss as to the rest of its arguments. (ECF No. 5.)

This case remains open.

**IT IS SO ORDERED.**

**3/27/2024**                                                        **s/Edmund A. Sargus, Jr.**
**DATE**                                                               **EDMUND A. SARGUS, JR.**
                                                                                **UNITED STATES DISTRICT JUDGE**